# In the United States Court of Federal Claims

No. 10-51C

(Filed: August 2, 2011)

_____

| | |
|---|---|
| NORMANDY APARTMENTS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | * Contract case; Motion to dismiss for lack of <br> * jurisdiction under RCFC 12(b)(1); Judicial <br> * estoppel; Position taken by government in <br> * district court case not clearly inconsistent <br> * with current position and did not mislead <br> * other courts; Privity of contract lacking; <br> * Argument that state agency was agent of <br> * HUD rejected; Amendment of complaint <br> * under RFCF 15; Futility; Plaintiff permitted <br> * to amend complaint to raise regulatory <br> * takings argument. <br> * |

_____

**OPINION**

_____

*Walter Wayne Mills*, Mills and McKeever, P.C., Oklahoma City, OK, for plaintiff.

*Amanda L. Tantum*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA, Judge:**

The plaintiff in this action is a property owner that participated in a subsidized housing program run by the Department of Housing and Urban Development (HUD). In exchange for rent subsidies and other benefits, plaintiff agreed to maintain its property in a decent, safe, and sanitary manner. The contract in which it made this promise – a Housing Assistance Payment contract (HAP contract) – provided that the failure to maintain and operate the property would be an event of default that could result in the suspension or cancellation of payments. In fact, upon finding that the property in question was neither decent, safe, nor sanitary, HUD informed plaintiff that it was cancelling plaintiff's subsidy payments. Plaintiff challenges this action, and the inspection findings on which it was premised, contending that HUD's cancellation of its rent subsidies breached its HAP contract.

In a motion to dismiss under RCFC 12(b), defendant asserts, *inter alia*, that this court lacks jurisdiction over this case because plaintiff's HAP contract was not with HUD, but with a

state public housing authority. Privity, defendant contends, is thus absent in this case. For the reasons that follow, the court **GRANTS**, in part, defendant's motion to dismiss. As will also be explained, the court **GRANTS** plaintiff leave to file an amended complaint raising a regulatory takings claim.

### I.   BACKGROUND

A brief recitation of the facts provides necessary context.[1]

In 1974, Congress amended the Housing Act of 1937 to create what is known as the Section 8 Housing Program (the Section 8 Program). *See* 42 U.S.C. § 1437f. That program provides federally-subsidized housing to millions of low-income tenants by authorizing, *inter alia*, the payment of rent subsidies to private owners and developers of low-income housing. Under the program, tenants make rental payments based upon their income and ability to pay; HUD then provides "assistance payments" to the private landlords to make up the difference between the tenant's contribution and a "contract rent" agreed upon by the landlord and HUD. *See* 42 U.S.C. §§ 1437a(a), 1437f(c)(3)(A); *Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 164 (2008) (describing the program); *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751, 753 (2003) (*Cuyahoga I*) (same).

Normandy Apartments, Ltd. (Normandy) owns and manages Normandy Apartments, a 208-unit complex constructed in Tulsa, Oklahoma, in 1968. Normandy financed the construction of this complex with a mortgage insured under the National Housing Act, 12 U.S.C. § 1715*l*. Effective October 1, 1992, Normandy and "the United States of America, acting through [HUD]" entered into a HAP contract, with the acting director of HUD's Tulsa office signing the contract on behalf of the United States. Although this original HAP contract expired in 1997, it was periodically renewed throughout the period in question.

In 2000, Normandy sought to prepay its mortgage. On May 23, 2000, it entered into a "Use Agreement" with HUD under which Normandy was allowed to prepay its HUD-insured mortgage in exchange for its promise to maintain the property as low-income housing for a period of time. Various statutes then in force required the execution of agreements like this as a precondition for HUD to allow a property-owner to prepay its mortgage. *See Independence Park Apartments v. United States*, 449 F.3d 1235, 1248 (Fed. Cir. 2005) (explaining the role played by such agreements). The agreement was signed by one of Normandy's partners and the Director of HUD's Oklahoma City Multifamily Center. Under the Use Agreement, Normandy was to reserve its units for low-income tenants under HUD's Section 8 Program until June 1, 2009.

On October 1, 2004, Normandy entered into a HAP Basic Renewal Contract (the HAP Renewal Contract). This contract listed the Oklahoma Housing Finance Agency (OHFA)[2] as the

---

[1] These facts are largely drawn from plaintiff's complaint, and, for purposes of this motion, are assumed to be correct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

contract administrator and was signed by OHFA's Executive Director and one of Normandy's partners. HUD was neither a named party nor a signatory on the renewal contract. The renewal contract stated that "except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed;" it extended HAP payments to Normandy for five years.

The aforementioned contracts and HUD's regulations required Normandy's Section 8 units to be kept "decent, safe, sanitary, and in good repair" at all times and contemplated regular inspections of the property. *See* 24 C.F.R. § 886.323. In November 2004, HUD's Real Estate Assessment Center (REAC) inspected the Normandy Apartments and gave the physical condition of the property a failing score of 59c*.[3] Normandy tried to correct these deficiencies. Starting in February 2005, OHFA conducted a series of follow-up reviews of the property, finding, at that time, that the "exigent health and safety" deficiencies had been corrected. HUD did not conduct a follow-up review. In February 2006, however, HUD sent Normandy a certified letter stating that because it had been unable to reinspect the property "due to unforeseen circumstances," it was closing its review of the property's November 2004 REAC physical condition score.

On August 23, 2006, REAC inspected Normandy Apartments and gave the property a failing score of 54c*. On August 29, 2006, OHFA conducted a management review inspection of Normandy Apartments. It concluded that "the deficiencies noted on the last REAC physical inspection conducted on 8/23/06 have been satisfactorily completed" and that "the REAC score of 54c* does not reflect the appearance of the property" because "the property is in decent, safe, and sanitary condition." Subsequently, Normandy requested an adjustment of the August 23, 2006, REAC score. On or about October 15, 2006, and, again in November 2006, it called HUD to check the status of its appeal, but was unable to obtain any information. A week after the last of these calls, HUD informed Normandy that the appeal would not be considered because it was untimely. In March 2007, HUD asked Normandy for a letter stating its intent to comply with the inspection requirements; HUD later assured Normandy that it would grant it another REAC inspection. No further REAC inspections occurred.

On June 20, 2007, HUD instead informed Normandy that it was terminating its Section 8 HAP payments to Normandy because of its August 2006 REAC failing score. HUD notified Normandy's tenants that it would stop providing rent assistance payments. A September 28,

---

[2] OFHA is a public housing agency (PHA). A PHA is "any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of public housing." 42 U.S.C. § 1437a(b)(6)(A).

[3] The "c" following the score indicated that at least one life threatening health and safety deficiency was noted. The "*" after the score indicated that at least one inoperable smoke detector was noted.

2007, letter from HUD confirmed its termination of Normandy's Section 8 HAP payments. HUD abated its HAP payments beginning on November 1, 2007, and continued the abatement through June 1, 2009.

In October of 2007, Normandy filed suit in the United States District Court for the Western District of Oklahoma, seeking declaratory and injunctive relief to stop HUD from abating the HAP payments, claiming that HUD had breached the HAP contract and violated its regulations. On November 1, 2007, the district court denied Normandy's motion for a preliminary injunction, finding that this court, and not it, had exclusive jurisdiction over the breach of contract claim against HUD. *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 2007 WL 3232610, at *2 (W.D. Okla. Nov. 1, 2007). On appeal, the United States Court of Appeals for the Tenth Circuit affirmed the dismissal of the breach of contract claim, but reversed the dismissal of a separate claim that HUD violated its own regulations. *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1297, 1299-1300 (10th Cir. 2009). Subsequently, however, plaintiff moved to voluntarily dismiss its case, which motion the district court granted on April 2, 2009.

On January 25, 2010, plaintiff filed a complaint in this court, alleging that HUD breached the 2004 HAP Renewal Contract with Normandy by failing to follow the proper protocol for termination of HAP payments. On April 2, 2010, defendant filed a motion to dismiss pursuant to RCFC 12(b)(1), alleging there is no privity of contract between defendant and Normandy, and pursuant to RCFC 12(b)(6), alleging that Normandy failed to state a claim. On May 3, 2010, plaintiff filed its response, and on May 20, 2010, defendant filed its reply. The court held oral argument on defendant's motion on September 8, 2010. On June 1, 2011, defendant provided the court with additional documentation regarding the contracts in question.

## II.   DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff must establish that the court has subject matter jurisdiction over its claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Hansen v. United States*, 65 Fed. Cl. 76, 94 (2005). The court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). RCFC 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." But, this provision "does not apply to a motion made under Rule 12(b)(1) to dismiss for lack of jurisdiction over the subject matter," under which the court undoubtedly may "address matters outside the pleadings." *Reed Island–MLC, Inc. v. United States*, 67 Fed. Cl. 27, 32 (2005) (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002)); *see also Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 58 (2009).

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [ ] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Klamath Tribes Claims Comm. v. United States*, 97 Fed. Cl. 203, 208 (2011). The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 555; *see also Dobyns v. United States*, 91 Fed. Cl. 412, 422–28 (2010) (examining this pleading standard). Nevertheless, the Federal Circuit has recently reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009); *see also Bank of Guam v. United States*, 578 F.3d 1318, 1326 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3468 (2010); *Petro-Hunt,* 90 Fed. Cl. at 68.

Defendant argues, under RCFC 12(b)(1), that this court lacks jurisdiction over plaintiff's complaint because the contract on which plaintiff predicates its case was not with the United States or an agency thereof. It alternatively claims that plaintiff's complaint fails to state a claim and should be dismissed under RCFC 12(b)(6). Plaintiff demurs to these dismissal arguments, making various contentions to which the court will now turn.

### A.     Judicial Estoppel

As a threshold matter, plaintiff asserts that defendant should be estopped from arguing that this court lacks jurisdiction because it claimed otherwise in the injunctive action previously filed by plaintiff in the district court. Plaintiff contends that having argued to the district court that plaintiff's contract case belonged in this court, defendant should be precluded from now contending otherwise.

"The doctrine of judicial estoppel," the Federal Circuit has stated, "is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Because this doctrine has its roots in "protect[ing] the integrity of the judicial process," *New Hampshire v. Maine*, 532 U.S. 742, 755 (2001),[4] there is little doubt that it generally applies to the United States, albeit with some caveats not herein relevant. *See Cuyahoga Metro. Hous. Auth. v. United States*, 65 Fed. Cl. 534, 554-56 (2005) (*Cuyahoga II*) (discussing this issue at length); *see also New Hampshire v. Maine*, 532 U.S. at 755 (applying the

---

[4]  *See also In re Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. denied*, *sub nom.*, *Cassidy v. Comm'r of Internal Revenue*, 498 U.S. 812 (1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980) (rule is intended to prevent "improper use of judicial machinery"); *Scarano v. Centr. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts'") (quoting *Stretch v. Watson*, 69 A.2d 596, 603 (N.J. Sup. Ct. Ch. Div. 1949)).

doctrine to a state).[5] More debatable is whether the doctrine may restrain any party, including the United States, from arguing lack of jurisdiction. On this count, there is a brewing conflict among the circuits. *Compare Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 14 (1st Cir. 1999) (indicating that judicial estoppel may be invoked to prevent claims of lack of jurisdiction), *with Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004), *cert. denied*, *sub nom.*, *Krassner v. Whiting*, 545 U.S. 1131 (2005) (indicating that such estoppel cannot be used to confer absent jurisdiction); *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000) ("caution[ing] that 'special care' should be taken in considering whether judicial estoppel should even apply 'to matters affecting federal subject matter jurisdiction.'" (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 4477 (1981)).

Even if this estoppel doctrine is available in theory here, it is, nonetheless, inapplicable on the facts presented. While the circumstances under which the doctrine may be applied are not "reducible to any general formulation of principle," *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982), according to the Supreme Court, "several factors typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire*, 532 U.S. at 750; *see also Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011). "First, a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire*, 532 U.S. at 750. "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotations omitted). Finally, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751; *see also Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1303 (Fed. Cir. 2002); *Cuyahoga II*, 65 Fed. Cl. at 555; *Westinghouse Elec. Co. v. United States*, 56 Fed. Cl. 564, 570-71 (2003), *aff'd*, 97 Fed. Appx. 931 (Fed. Cir. 2004).

As to the first of these factors, it is important to note that defendant's position in this case is not as inconsistent with its earlier position as plaintiff would have this court believe. Contrary

---

[5] As discussed in *Cuyahoga II*, there are at least two reasons why this preclusion doctrine ought to apply to the United States. First, "this form of estoppel is less akin to equitable or nonmutual collateral estoppel, and more like concepts of waiver by litigation conduct (*e.g.*, failing to raise an argument at the appropriate time) or sanctions for spoliation of evidence, discovery abuse, or perpetrating fraud upon the court." *Cuyahoga II*, 65 Fed. Cl. at 555. "And if these principles apply to the United States, as they do, based upon the need to protect the integrity of the judicial system, so too should the doctrine of judicial estoppel, which is predicated upon the same vital need." *Id.* (citing cases). Second, "[t]he rationales commonly employed in shielding the United States from other forms of estoppel simply do not resonate in this very different context," as the doctrine applies only to "'a knowing assault upon the integrity of the judicial system.'" *Cuyahoga II*, 65 Fed. Cl. at 556 (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 474 (6th Cir. 1988)).

to plaintiff's claims, in the district court, defendant never argued that HUD was a party to the HAP Renewal Contract, nor that Normandy was in privity with the United States as to that contract. Rather, in its primary brief, defendant contended, more generally, that the "[a]llegations in Plaintiff's Complaint and Motion [for injunctive relief] demonstrate that this case belongs in the [Court of Federal Claims] and that this Court lacks jurisdiction." While defendant went on to explain that plaintiff's complaint was "founded upon regulations of an executive department and a contract with the United States," it did not specifically assert that plaintiff's contract claim was *bona fide* or that privity existed between Normandy and HUD as to the 2004 HAP Renewal Contract. To be sure, as plaintiff points out, in an affidavit attached to defendant's district court brief, a HUD official stated that "Normandy Apartments Ltd. (the owner) entered into a Housing Assistant Payment (HAP) contract with HUD [in] September 2004." But, this non-lawyer's statement – which, as will be seen, is mistaken – was not relied upon by defendant in its briefs and is not the type of juridical statement upon which judicial estoppel generally may be based.[6]

Even were this point debatable, there is no debate that the courts in the Tenth Circuit were not misled by defendant. While the district court ultimately dismissed plaintiff's complaint, it did so on the basis that "what plaintiff really seeks is HUD's specific performance of the HAP Contract, specifically payment of the Housing Assistance Payments thereunder." *Normandy Apartments, Ltd.*, 2007 WL 3232610, at *2. In so holding, the district court did not find that this court had jurisdiction, but rather found, relying upon Tenth Circuit precedent, that "'the Tucker and Little Tucker Acts impliedly forbid federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for contract claims against the government.'" *Id.* at *3 (quoting *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1082 (10th Cir. 2006)). Normandy appealed this decision. Critically, while that appeal was pending, defendant advised the Tenth Circuit and plaintiff that it believed that this court lacked jurisdiction over plaintiff's claims, based upon the Federal Circuit's intervening decision in *Senate Manor, L.L.C. v. U.S. Dep't of Hous. & Urban Dev.*, 315 Fed. Appx. 234 (Fed. Cir. 2008).[7] Ultimately, without commenting on *Senate Manor*, the Tenth Circuit reversed, in part,

---

[6] In holding that judicial estoppel may be applied against the United States, courts have noted that because the doctrine applies only where there is intentional self-contradiction, invocation of the doctrine does not raise a "concern that application of estoppel principles could convert inadvertent statements by government employees into legally binding precedents." *Cuyahoga II*, 65 Fed. Cl. at 556; *see also Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 433 (1990) (declining to apply equitable estoppel to the United States based on the government's inability to "secure perfect performance from its hundreds of thousands of employees"). Viewed in these terms, the doctrine "merely enforces the responsibilities of ordinary diligence and candor that the cadre of attorneys representing the United States already owe," *Cuyahoga II*, 65 Fed. Cl. at 556, a duty that is not violated by the misstatement made by the HUD official in his district court affidavit.

[7] As will be discussed below, in *Senate Manor*, the Federal Circuit held that a district court had erred in transferring a case to this court because there was no privity of contract

the district court's jurisdictional ruling, finding that plaintiff's claims were based on HUD's alleged violation of federal regulations, rather than on a contractual relationship, thereby allowing the case to proceed under the Administrative Procedures Act, 5 U.S.C. § 702. *See Normandy Apartments, Ltd.*, 554 F.3d at 1299-1300.[8] Yet, following this ruling, and fully cognizant of defendant's changed litigating position, Normandy moved voluntarily to dismiss its case and decided to file this action instead. Accordingly, the arguments originally made by defendant regarding the contractual nature of plaintiff's claims played no role in the final disposition of the district court action and thus can provide no basis for estopping defendant from raising its jurisdictional arguments here.[9]

This same course of procedural events bears on the third and final *New Hampshire* factor, which focuses on whether the party seeking to press an inconsistent argument would gain an advantage from doing so. 532 U.S. at 751. Simply put, for the reasons already stated, given what transpired before and after the Tenth Circuit's decision, plaintiff is hard-pressed to demonstrate that defendant's earlier position in the district court action caused it any harm.

The court's analysis of the *New Hampshire* factors reveals that plaintiff cannot invoke judicial estoppel here. This is not an instance in which defendant "deliberately chang[ed] positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50. Absent such gamesmanship, defendant is free to pursue its privity argument before this court – an argument to which this court now turns.

## B.     Privity of Contract

"[F]or the government to be sued on a contract pursuant to the Tucker Act, there must be privity of contract between the plaintiff and the United States." *Chancellor Manor v. United*

---

between Senate Manor and HUD. 315 Fed. Appx. at 238. As in this case, Senate Manor had entered into a HAP contract with a state public housing agency. *Id.* at 236.

[8]   The Tenth Circuit declined to rule specifically on whether the district court had jurisdiction over the claims plaintiff had framed in contractual terms, stating that "[s]ince the contractual and regulatory rights asserted and relief requested are essentially congruent, we need not address whether district court jurisdiction over Normandy's contractual claims is appropriate on any of the additional grounds Normandy asserts." *Normandy Apartments*, 554 F.3d at 1301.

[9]   Indeed, the Federal Circuit's intervening opinion in *Senate Manor*, although nonprecedential, is probably enough to preclude the use of judicial estoppel here.   In this regard, it is well-accepted that judicial estoppel does not lie when a party changes its position in a good faith response to a new decision. *See*, *e.g.*, *Longaberger Co. v. Kolt*, 586 F.3d 459, 469-71 (6th Cir. 2009); *United States v. Vastola*, 989 F.2d 1318, 1324 (3d Cir. 1993); *see also* 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *et al.*, Fed. Prac. & Proc. § 4477 (3d ed. 2010).

*States*, 331 F.3d 891, 899 (Fed. Cir. 2003); *see also Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003). This is so because the doctrine of sovereign immunity precludes a suit against the United States without its consent and because, under the Tucker Act, the United States has "consent[ed] to be sued only by those with whom it has privity of contract." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (quoting *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)). Accordingly, "[t]he effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998), *cert. denied*, 528 U.S. 820 (1999). Conversely, finding a lack of privity deprives this court of jurisdiction. *See First Annapolis Bancorp, Inc. v. United States*, 2011 WL 2675807, at *6 (Fed. Cir. July 11, 2011) ("The lack of privity impacts the lack of waiver of sovereign immunity, which is available pursuant to the Tucker Act."); *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 n.3 (Fed. Cir. 2005), *cert. denied*, *sub nom.*, *Martin v. United States*, 548 U.S. 904 (2006) ("[S]tanding and privity of contract with the government are questions of subject matter jurisdiction."); *see also Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Absent privity between [plaintiffs] and the government, there is no case.").

Defendant claims that jurisdiction is lacking here owing to the absence of privity among the parties. It points out that the 2004 HAP Renewal Contract names only OHFA and Normandy – and not the United States or an agency or official thereof – as the parties and signatories thereto.[10] Section 1 of the contract thus identifies that "[p]arties to [the] renewal contract" as

---

[10] Defendant attached a variety of documents to its motion to dismiss. It argues that this court may consider any document referenced in the complaint even if not attached thereto, without converting its motion to one for summary judgment. At first blush, this contention appears to fly in the face of RCFC 12(d), which, like its federal rules counterpart, states that "[i]f, on a motion under rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Defendant, however, observes that the Second Circuit has held that where a document is neither attached to the complaint nor "'incorporated by reference, the court may, nevertheless, consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Various other circuits have taken a similar view, at least where there is no dispute as to the authenticity of the documents relied upon. *See Perry v. New England Business Serv., Inc.*, 347 F.3d 343, 345 n.2 (1st Cir. 2003); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533 (5th Cir. 2003); *County of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002); *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F. 3d 198, 215 (3d Cir. 2002); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86 (6th Cir. 1997); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993); *see also* Kurtis A. Kemper, Annotation, "What Matters Not Contained in Pleadings may be Considered in a Ruling on a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings under Rule 12(c) without Conversion to Motion for Summary Judgment," 138 A.L.R. Fed. 393 (1997). The Federal Circuit, however, has not staked

OHFA and Normandy. This provision is then referenced in section 4.a(1) of the contract, which states: "The Renewal Contract is a housing assistant payments contract . . . between the Contract Administrator and the Owner of the Project (see section 1)." Consistent with the dictates of these provisions, the signature block of the agreement lists OHFA and its executive director – and not HUD and one of its officials – as the contract administrator and authorized representative, respectively, under the contract.

Undaunted, in contending that HUD should be viewed as a party to the 2004 HAP Renewal Contract, Normandy makes three arguments.

First, it contends that HUD was a party to the 2004 contract as it was a "renewal" contract. HUD signed the earlier HAP contracts, so the arguments goes, and thus must be viewed as having signed the later agreement, as well. But, this argument is a *non sequitur*. Section 5.a of the 2004 contract renews the earlier HAP contracts "[e]xcept as specifically modified by the Renewal Contract," and the 2004 contract plainly treats OFHA, and not HUD, as the contract administrator. Moreover, section 11 of the 2004 HAP contract contained specific default provisions applicable only where, as here, the contract administrator was a public housing authority – suggesting that Normandy knew full well with whom it was dealing. Accordingly, the fact that the 2004 contract is characterized as a "renewal" avails plaintiff naught. *See Senate Manor Props.*, 315 Fed. Appx. at 238 (rejecting reliance on this same "renewal" theory).

Second, Normandy asserts that HUD was a party to the 2004 HAP Renewal Contract because OFHA signed the contract as HUD's agent. But, nothing in the 2004 contract hints at such an agency relationship – indeed section 12.c of the contract explicitly provides to the contrary, stating that "[i]f the contract administrator is a PHA acting as a Contract Administrator pursuant to an annual contributions contract ('ACC') between the PHA and HUD, the Contract Administrator is not the agent of HUD." Despite this, Normandy asks this court to imply an agency relationship between OHFA and HUD because the 2004 contract incorporates various HUD requirements, was funded by HUD, and anticipates continuing supervision by that agency. In fact, this two-tiered scheme – under which HUD contracts with a PHA which, in turn, contracts with a project owner – has long been a feature of the Housing Act. *See* 42 U.S.C. § 1437f(b) (2004); *see also Nat'l Leased Hous. Ass'n v. United States*, 32 Fed. Cl. 454, 456-57

---

out a position on this issue. *See Am. Contractors Indem. Co. v. United States*, 570 F.3d 1373, 1376 (Fed. Cir. 2009). This court also need not wade into this issue, for the only two documents outside the complaint on which it relies – the Use Agreement and the 2004 Renewal Contract – were incorporated by reference in plaintiff's complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

(1994).[11]  Cases examining this schema have repeatedly held that it does not give rise to an agency arrangement – that "[a] grant of benefits and subsequent oversight by HUD is insufficient to establish a contractual obligation between [a developer] and the government." *Katz*, 16 F.3d at 1210.  This is true even if the "the Federal Government has intimate control over a project, including prior approval of plans and costs," *Marshall N. Dana Constr., Inc. v. United States*, 229 Ct. Cl. 862, 864 (1982), and, conversely, the state agency "'is acting merely as a conduit for the federal funds.'" *Katz*, 16 F.3d at 1210 (quoting *Marshall N. Dana Constr.*, 229 Ct. Cl. at 864); *see also Brighton Vill. Assocs. v. United States*, 52 F.3d 1056, 1059-60 (Fed. Cir. 1995) ("HUD's grant of benefits and subsequent oversight of the local administering agency in *Katz* did not establish a contractual relationship with the builder"); *Nat'l Leased Hous. Ass'n*, 32 Fed. Cl. at 457.  Applying these principles, various decisions hold that the same two-tiered structure presented by the relevant contract here does not meet the privity requirement.[12]  And the court sees no reason to reach a different result here.

Nor does plaintiff's third and final contention – that the requisite privity for its contract claim comes from the Use Agreement it entered into with HUD in 2000 – fare any better.  Defendant does not deny that the Secretary of HUD was a party to that agreement and that the agreement was effective during the years in question.  But, plaintiff is simply wrong in suggesting that the Use Agreement incorporated all the terms of the pending and ***future*** HAP contracts.  In particular, unlike the HAP contracts, the Use Agreement makes no assurances that rent subsidies will be provided if Normandy maintains the property in safe and habitable condition.  Rather, in terms of subsidies, the agreement merely recites, in section 4(a), that "[f]or Apartments covered by a HAP contract, rent increases shall be governed by Section 8 requirements for such contract, including any future HUD changes that govern such contract."  The Federal Circuit has held that statutory references, like these, to the National Housing Act do not incorporate, by reference, all the terms of that statute.  Hence, in *St. Christopher Associates, L.P. v. United States*, 511 F.3d 1376 (Fed. Cir. 2008), the court rejected the notion that a

---

[11]  As in effect during the years in question, section 1437f(b) of Title 42 provided:  "The Secretary is authorized to enter into annual contribution contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwellings units in accordance with this section."  42 U.S.C. § 1437f(b) (2004).

[12]  *See New Era Constr. v. United States*, 890 F.2d 1152, 1154-55 (Fed. Cir. 1989); *Marshall N. Dana Constr.*, 229 Ct. Cl. at 863-64; *G-Lam Corp. v. United States*, 227 Ct. Cl. 764 (1981); *Correlated Development Corp. v. United States*, 556 F.2d 515 (Ct. Cl. 1977); *Hous. Corp. of America v. United States*, 468 F.2d 922, 924 (Ct. Cl. 1972); *D.R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505 (Ct. Cl.), *cert. denied*, 389 U.S. 835 (1967); *Nat'l Leased Hous. Ass'n*, 32 Fed. Cl. 458.  Indeed, the Federal Circuit has generally refused to treat a third party as acting on behalf of an agency, for privity purposes, "unless the contract contains a reasonably clear indication that the government intended to create an agency relationship and to permit [] suit." *Nat'l Leased Hous. Ass'n*, 32 Fed. Cl. at 460 (citing *United States v. Johnson Controls, Inc.*, 713 F.3d 1541, 1551 (Fed. Cir. 1983)).

regulatory agreement similar to the Use Agreement incorporated various statutory and regulatory requirements, so as to support a claim that HUD breached the regulatory agreement when it allegedly violated the statutory and regulatory provisions. In so concluding, the Federal Circuit was reluctant "to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation." *Id*. at 1384; *see also Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 826 (Fed. Cir. 2010), *cert. denied*, 131 S. Ct. 997 (2011).[13] And it held that the contract's general reference to a statute did not mean that an alleged violation of the statute would give rise to a breach of contract action. *St. Christopher Assocs.*, 511 F.3d at 1384; *see also Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). A contrary view, the Federal Circuit noted, risks creating "'[a] wholly new ground of obligation . . . by mere implication.'" *St. Christopher Assocs.*, 511 F.3d at 1384 (quoting *Smithson*, 847 F.2d at 794 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1010 (Ct. Cl. 1967))).

Similar reasoning precludes this court from treating the Use Agreement's passing reference to "a HAP contract" as incorporating all the provisions of those contracts. Similar to the way it has approached statutory references, the Federal Circuit has held that an "incorporating contract must use language that is ***express*** and ***clear***, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract." *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008) (emphasis in original).[14] To be sure, the same court said that incorporations need not be effectuated through "a rote phrase or a formalistic template." *Northrop Grumman*, 535 F.3d at 1345. But, here there is not the

---

[13] In *St. Christopher Associates*, the Federal Circuit rejected a contrary conclusion by the Fifth Circuit in *Christopher Vill., L.P. v. Retsinas*, 190 F.3d 310, 316 (5th Cir. 1999), noting that the Federal Circuit had previously found that ruling to be void for lack of jurisdiction. *St. Christopher Assocs.*, 511 F.3d at 1384 (citing *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1333 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005)).

[14] At another point in its opinion, the Federal Circuit reiterated that the –

> cases support a principle in our Circuit that the language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).

*Northrop Grumman*, 535 F.3d at 1345; *see also Precision Pine & Timber, Inc.*, 596 F.3d at 826 ("To incorporate material by reference, a contract must use clear and express language of incorporation, which unambiguously communicates that the purpose is to incorporate the referenced material, rather than merely acknowledge that the referenced material is relevant to the contract."); *Dobyns v. United States*, 91 Fed. Cl. 412, 420 (2010).

slightest hint that the parties to the Use Agreement intended to incorporate therein the provisions of current and future HAP contracts dealing with the payment of rent subsidies. For one thing, the Use Agreement's reference to the HAP contracts was to the latter agreement's provisions dealing with rent increases, and not to those concerning the suspension of subsidies in the case of properties not maintained in a safe or decent state. Moreover, read in context, it is apparent that the primary purpose of the language quoted above was to make clear that rent increases for apartments subject to a HAP contract were to be governed by that contract and not the Use Agreement – essentially, the opposite of what plaintiff maintains here. Accordingly, the court concludes that the Use Agreement does not provide a basis for this court to exercise jurisdiction over plaintiff's claim.[15]

Based on the foregoing, the court thus finds that it lacks jurisdiction over plaintiff's contract claim.[16]

### C.     Takings

In its brief, plaintiff indicates that, if the court dismisses its contract claim, it should grant plaintiff leave to amend its complaint to assert, as an alternative, a regulatory takings claim.

In a case like this, RCFC 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Under this provision, absent defendant's consent – which, most certainly, has not been provided – the grant or denial of a motion to amend the pleadings is within this court's discretion. *See Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989); *see also Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1372 (Fed. Cir. 2004). While leave to amend a pleading under RCFC 15(a)(2) is to be "freely" given "when justice so requires," that permission is not

---

[15]   The court notes, in this regard, that Normandy's existing complaint only avers a breach of the 2004 HAP Renewal Contract and does not assert any breach of the Use Agreement. For reasons similar to those discussed above, the court sees no purpose in permitting plaintiff to amend its complaint to raise a claim predicated upon the breach of the Use Agreement. *See* discussion, *infra*, regarding RCFC 15. For similar reasons, the court rejects plaintiff's reliance on an implied-in-fact contract claim that, again, appears nowhere in its existing complaint.

[16]   As defendant points out, this court lacks jurisdiction over plaintiff's claim for "interest" as there is no statute authorizing the payment of prejudgment interest here. *See Library of Congress v. Shaw*, 478 U.S. 310, 317 (1986). Defendant also moves to dismiss plaintiff's claims for "costs" and "reasonable attorney's fees," but the court views these requests as merely preserving plaintiff's rights to seek these recoveries at an appropriate time via an appropriate motion (*e.g.*, a motion for attorneys fees pursuant to 28 U.S.C. § 2412). Hence, the court denies defendant's motion to dismiss as to these items. As the court has granted defendant's motion to dismiss plaintiff's contract claim, it need not decide whether that count of plaintiff's complaint fails to state a claim under RCFC 12(b)(6).

automatic and may be denied, *inter alia*, when the opposing party would be substantially prejudiced by the amendment or when the amendment is unreasonably delayed. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Cuyahoga I*, 57 Fed. Cl. at 780-81.[17] And as defendant is quick to remind, the court also may deny leave to amend if the amendment would be futile. *Foman*, 371 U.S. at 182; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). A party faced with the possible denial based on futility "must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kermin Foods, L.C. v. Pigmentos Vegetables Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2007); *see also Fernandez de Iglesias v. United States*, 96 Fed. Cl. 352, 362 (2010).

Defendant opposes the amendment. While it asserts that it would be prejudiced by the filing of an amended complaint, it is hard to see how this can be true as there has been no discovery yet in this case. *See Adam v. Hawaii*, 235 F.3d 1160, 1164 (9th Cir. 2001) (no prejudice where "there ha[d] been no discovery"); *Clark v. Feder Semo & Bard, P.C.*, 560 F. Supp. 2d 1, 4 (D.D.C. 2008) (same); *cf. Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1373 (Fed. Cir. 2008) (plaintiff holder would not be allowed to amend complaint to allege claim it had expressly disavowed, twenty months after deadline to amend pleadings and four months after close of discovery). Moreover, defendant hardly is in a position to play the role of the pedantic schoolmaster in insisting upon "pleading purity," given its own change of position in the district court action. Nor does the court believe that the filing of an amended complaint raising a takings theory would be futile. Indeed, on multiple occasions, the Federal Circuit has, in the absence of privity of contract, offered up the possibility that a property owner may claim that HUD's actions effectuated a regulatory takings claim. *See Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003); *see also Cienega Gardens v. United States*, 503 F.3d 1266 (Fed. Cir. 2007); *Independence Park Apartments*, 440 F.3d at 1240-42; *Chancellor Manor*, 331 F.3d at 901-02; *CCA Assocs. v. United States*, 91 Fed. Cl. 580, 620 (2010); *cf. St. Christopher Assocs.*, 511 F.3d at 1386. This is not to say – at this preliminary juncture – that plaintiff ultimately will succeed on the merits of such a claim. It is only to say that such a claim is viable enough to warrant giving plaintiff the opportunity to amend its complaint under RCFC 15.

---

[17] *See also Smith v. Pac. Prop. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir.), *cert. denied, sub nom.*, *Pac. Prop. & Dev. Corp. v. Disabled Rights Action Comm.*, 543 U.S. 869 (2004); *Strub v. Axon Corp.*, 1998 WL 537721, at *11 (Fed. Cir. 1998) ("Although Rule 15(a) gives the . . . court the discretion to freely grant a party leave to amend when justice so requires, this discretion is not without limitation."); *Mitsui Foods*, 867 F.2d at 1403. RCFC 15(a) is identical to Federal Rule of Civil Procedure 15(a) and case law construing the latter may be used to interpret the former. *See Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260, n.4 (Fed. Cir. 1991); *Shoshone Indian Tribe of the Wind River Reservation, Wy. v. United States*, 71 Fed. Cl. 172, 177 n.7 (2006).

Accordingly, under RCFC 15(a), the court deems plaintiff's statements on brief as the equivalent of a motion to amend the subject complaint to raise a takings claim and, so deemed, allows that motion. *See Cuyahoga I*, 57 Fed. Cl. at 781; *Spehr v. United States*, 51 Fed. Cl. 69, 83 (2001), *aff'd*, 49 Fed. Appx. 303 (Fed. Cir. 2002). Therefore, on or before August 29, 2011, plaintiff shall formally file an amended complaint raising its entitlement to damages on a takings theory.

### III.  CONCLUSION

Based on the foregoing, the court **GRANTS**, in part, defendant's motion to dismiss insofar as it asserts that this court lacks jurisdiction over plaintiff's contract claim. In all other respects, the court **DENIES** defendant's motion. In addition, the court **GRANTS** plaintiff's request for leave to file an amended complaint, said complaint to be filed no later than August 29, 2011.

**IT IS SO ORDERED**.

                                                     s/ Francis M. Allegra
                                                   Francis M. Allegra
                                                   Judge